## IN THE DISTRICT COURT OF THE UNITED STATES
## FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Therl Taylor, #260961, | ) | Case No. 2:15-cv-4958-RMG-MGB |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Virginia Grubbs, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

This is a civil action pursuant to 42 U.S.C. § 1983. Plaintiff is a state prisoner incarcerated at Ridgeland Correctional Institution in South Carolina. He is proceeding *pro se* and *in forma pauperis* ("IFP"). Pursuant to the provisions of 28 U.S.C. § 636(b)(1), and Local Civil Rule 73.02(B)(2) (D.S.C.), the United States Magistrate Judge is authorized to review the complaint and to submit findings and recommendations to the United States District Judge. After careful review, the Magistrate Judge recommends that the Complaint be **summarily dismissed**, with prejudice, and without issuance and service of process, based on the following findings of fact and conclusions of law:

## I. Background

Plaintiff is a state prisoner serving concurrent state sentences for murder (36 years) and possession of a weapon during the commission of a violent crime (5 years). His initial conviction was reversed by the South Carolina Supreme Court because the evidence was insufficient to warrant the jury charge on mutual combat. *See State v. Taylor,* 356 S.C. 227 (2003). Upon retrial in January 2005, the jury found him guilty of both charges. His appeal was dismissed. *State v. Taylor*, 2007 WL 8391909 (S.C. Ct. App. 2007) ("[a]fter a thorough review of the record pursuant

to *Anders…*we dismiss the appeal"). Plaintiff's application for state post-conviction relief ("PCR") was denied. Plaintiff filed a federal habeas petition, which was denied on the merits. *See Taylor v. Warden*, Case No. 2:13-cv-2213-RMG-WWD, 2014 WL 4721183 (D.S.C. Sep. 22, 2014), *appeal dismissed*, 594 F.App'x 186 (4th Cir. March 2, 2015), *cert. denied*, 136 S.Ct. 323 (Oct. 13, 2015).

## II.  The Present Lawsuit

### A.  Parties

Plaintiff has filed a lengthy complaint under 42 U.S.C. § 1983, complaining of the mail room services and grievance processing at Allandale Correctional Institution. (DE# 1, "Complaint" totaling 100 pages with attachments).[1] Plaintiff names seven employees of the South Carolina Department of Corrections ("SCDC") as Defendants: (1) Virginia Grubbs (prison mail room attendant); 2) Pamela Smith (grievance coordinator); 3) Ann Hallman (supervisor at SCDC's headquarters "Grievance Branch"); 4) Sherman Anderson (supervisor at SCDC's headquarters "Grievance Branch"); 5) Valerie Jones (described as being responsible for distribution of legal supplies and photocopies); 6) Randall Williams (supervisor of Grubbs and Jones); and 7) John Pate (described as "overall supervisor"). (DE# 1 at 3-4).[2] Plaintiff indicates that "all defendants are sued in their official and individual capacities." (*Id*. at 19). Plaintiff also sues an eighth defendant "Allendale/Fairfax County-City." In an attempt to clarify the identity of such defendant, the Court issued Special Interrogatories (DE# 18) to the *pro se* Plaintiff, who responded that he wanted to sue the "City of Allendale." (DE# 20, Answers to Special Interrogatories).

---

[1] See http://public.doc.state.sc.us/scdc-public/inmate. A state records check indicates that Plaintiff was incarcerated at Allendale Correctional Institution from January 11, 2012 until June 1, 2015, and then transferred to Ridgeland Correctional Institution.

[2] Plaintiff also complains about various SCDC employees who are not defendants here. (See, e.g., DE# 1 at 15-18) complaining that Admin. Asst. Connie Beuhler "interfered with communications and confused and/or compromised Basic Communication. As also did Senior Administrative Ass. (sic) Mrs. Cynthia Sanders").

### B.  The Claims

Plaintiff's lengthy complaint is rambling, disconnected, and difficult to follow. Liberally construed, the gist of the Complaint is that Plaintiff is complaining about mail room services and the processing and resolution of various grievances.[3] For example, he complains about the legibility of some copies; being told that he had to sign a document before it could be notarized; the alleged "attitude" of a mail room attendant who allegedly made "fake" phone calls to supervisors,; having to hand his documents to staff for photocopying; the sending of his legal mail by "regular mail;" the fact that he gets responses to grievances by inter-departmental mail rather than by certified mail; the processing of his mail by prison mailroom staff (which he asserts is a "privacy breach"); and the processing and resolution of many grievances (some of which are improper grievances about grievances). (DE# 1 at 1-19).[4]

In his own words, Plaintiff lists his issues as: 1) "harmful delay and denial of access to courts;" 2) "First Amendment, specifically the Chilling Effect;" 3) Fourth Amendment; 4) Fourteenth Amendment; 5) Due Process and Equal Protection; 6) discrimination; 7) retaliation; 8) respondeat supervisor;[5] 9) civil conspiracy; 10) conditions of confinement; 11) denial of right of self-representation in light of Faretta v. California, 422 U.S. 806 (1975), S.C. Code 40-5-310, and as an Indigent Individual; 12) Interfering with federal mail, specifically in violation of 18 U.S.C. §§ 1701 & 1702; 13) "violation of Plaintiff's civil right, XIII, U.S. ex rel. Accordi v. Shaughnessy, 74 S.Ct. 499 (1954), as revised." (DE# 1 at 3, IV, spelling and punctuation as in original).

---

[3] Plaintiff unsuccessfully alleged similar claims against mail room staff at another prison, Kershaw Correctional Institution. *See Taylor v. Amason*, Case No. 2:13-cv-3449-RMG-BHH (D.S.C. Sept. 28, 2015), *affirmed* 646 F. App'x 334, 2016 WL 1622397 (4th Cir. April 25, 2016), *cert. denied*, 2016 WL 4083498 (Oct. 03, 2016).

[4] Some of Plaintiff's allegations are nonsensical. (*See, e.g.,* DE# 1 at 15, ¶ 36 "When Plaintiff simply explained factual events and request basic job duties for Grubbs, she verbally, by Request to Staff "RTS" and on Global Techonology Link "GTL.").

[5] Presumably, Plaintiff is referring to the Latin term "respondeat superior."

For relief, Plaintiff seeks: 1) a declaration that the Defendants violated his rights; 2) an injunction ordering them "not to interfere and violate" his future rights and "to correct and destroy inaccurate and incorrect records connected to Plaintiff;" 3) a copy of the contents of the Warden's file on him; 4) an official apology; 5) mental health counseling; and 6) $2,000.00 in compensatory and punitive damages from each Defendant. Plaintiff also wants unspecified prior state court cases "re-opened." (DE# 1 at 19).

## III.  Relevant Law

### A.  Standard of Review

Under established local procedure in this judicial district, the Magistrate Judge has reviewed this *pro se* prisoner complaint pursuant to 28 U.S.C. § 1915 and in light of the following precedents: *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Gordon v. Leeke*, 574 F.2d 1147 (4th Cir. 1978).

Plaintiff filed this complaint under 28 U.S.C. § 1915, which permits an indigent litigant to bring an action in federal court without prepaying the administrative costs of proceeding with the action. To protect against possible abuses of this privilege, the statute allows the court to dismiss the case upon finding that the action is "frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. §1915(e)(2)(B). A finding of frivolity can be made where the complaint lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). A claim based on a meritless legal theory may be dismissed *sua sponte* "at any time" under 28 U.S.C. §1915(e)(2)(B). *Neitzke*, 490 U.S. at 319. The statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." *Id*. at 326.  The Prison Litigation Reform Act ("PLRA") also provides for the screening of complaints "in which a

prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).

Pro se pleadings are given liberal construction and are held to a less stringent standard than formal pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015). However, "[t]he 'special judicial solicitude' with which a district court should view ... pro se filings does not transform the court into an advocate. *United States v. Wilson*, 699 F.3d 789, 797 (4th Cir. 2012), *cert. denied*, 133 S.Ct. 2401 (2013). Only those questions which are squarely presented to a court may properly be addressed." *Weller v. Dept. of Soc. Servs., City of Baltimore*, 901 F.2d 387, 391 (4th Cir. 1990). Giving "liberal construction" does not mean that the Court can ignore a prisoner's clear failure to allege facts that set forth a cognizable claim. "Principles requiring generous construction of pro se complaints ... [do] not require ... courts to conjure up questions never squarely presented to them." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).

### B. The PLRA's 3-strike provision

The PLRA, at 28 U.S.C. § 1915(g) provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

See *McLean v. United States*, 566 F.3d 391, 404 (4th Cir. 2009). "[I]f a prisoner has already had three cases dismissed as frivolous, malicious, or for failure to state a claim for which relief may be granted, the prisoner generally may not proceed IFP but rather must pay up-front all filing fees for his subsequent suits." *Blakely v. Wards*, 738 F.3d 607, 609 (4th Cir. 2013), as amended (October

22, 2013). This means that, after receiving three strikes, a plaintiff will have to pay the full filing fee for almost any future non-habeas civil actions that he might wish to file. *Id.* at 610. Plaintiff is warned that if he continues to file pleadings that are frivolous, malicious, or fail to state a claim for which relief may be granted, he risks the accumulation of three strikes against him and the resulting denial of his future requests for IFP status, absent exceptional circumstances.

## IV.  Discussion

### A.  Elements of a Claim Under 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege facts indicating: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). While a complaint does not need to expressly invoke § 1983 as the legal theory for a claim, the United States Supreme Court has instructed that a complaint "must plead facts sufficient to show that [a] claim has substantive plausibility." *Johnson v. City of Shelby*, 135 S.Ct. 346 (2015) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009). The United States Supreme Court has emphasized that a plaintiff must do more than make generalized and conclusory statements to state a plausible claim for relief. *Iqbal*, 556 U.S. at 677–79. "A dismissal for failure to state a claim under Rule 12(b)(6) is presumed to be both a judgment and to be rendered with prejudice." *McLean*, 566 F.3d at 396, citing *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) ("The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is a judgment on the merits.").

### B.  Failure to Allege Any Facts Regarding the City of Allendale

The Complaint fails to meet this minimal pleading standard. Although Plaintiff indicates he is suing the "City of Allendale" (DE# 20), his Complaint contains no allegations against such

Defendant. Nothing in the Complaint indicates that the City of Allendale (including any city personnel or policies) had anything to do with any events in this case. Plaintiff appears to have sued the City of Allendale only because Allendale Correctional Institution is located there, which is an insufficient basis for the assertion of any claims against the City. Therefore, the City of Allendale should be dismissed as a party.

### C.  Eleventh Amendment Immunity

Plaintiff seeks monetary damages and other relief from state officials in their official capacity. Such defendants are immune from suit under the Eleventh Amendment, which provides that "the judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State or by citizens or subjects of any foreign state." U.S. Constitution, Am. 11. [6] The Eleventh Amendment protects states from suit regardless of whether money damages or injunctive relief is sought. *Seminole Tribe v. Florida*, 517 U.S. 44, 58 (1996) ("we have often made it clear that the relief sought by a plaintiff suing a State is irrelevant to the question whether the suit is barred by the Eleventh Amendment").

Sovereign immunity protects the State, as well as its agencies, divisions, departments, officials, and other "arms of the State." *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989) (explaining that a suit against a state official in official capacity is "no different from a suit against the State itself"); *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (same). Based on sovereign immunity, the Defendant SCDC employees in their official capacities are immune from suit and should be dismissed as parties. *See, e.g., Ransom v. Lawrence*, Case No. 6:12–3141–JFA–

---

[6] While sovereign immunity does not bar suit where a state has given consent to be sued, or where Congress abrogates the sovereign immunity of a state, neither exception applies here. Congress has not abrogated the states' sovereign immunity under § 1983, *see Quern v. Jordan*, 440 U.S. 332 (1979), and South Carolina has not consented to suit in federal district court, *see* S.C. Code Ann. § 15-78-20(e).

KFM, 2013 WL 4523588, *4 (D.S.C. Aug. 26, 2013) ("The defendants are all employees of the SCDC and thus are not subject to suit under § 1983 when sued in their official capacities"); *Edokobi v. Motz*, 2013 WL 6713290, *2 (D.Md. Dec.18, 2013) ("a complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit").

### D.  No Supervisory Liability

Plaintiff attempts to sue the supervisory Defendants (Smith, Hallman, Anderson, Williams, and Pate) in their individual capacity under a theory of respondeat superior. It is well-settled that supervisory positions alone do not subject a defendant to liability, as the doctrines of vicarious liability and respondeat superior generally do not apply in § 1983 actions. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 693 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). The United States Supreme Court has repeatedly emphasized that an individual defendant is not liable under § 1983 absent any personal involvement. *Iqbal*, 556 U.S. at 676–77 ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.... each Government official, his…title notwithstanding, is only liable for his…own misconduct"). In a § 1983 action, "liability is personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001).

When a complaint contains no personal allegations against a defendant, that defendant is properly dismissed. *See Reaves v. Richardson*, Case No. 4:09–820–TLW–SVH, 2011 WL 2119318, *6 (D.S.C.) ("without such personal involvement, there can be no liability under section 1983"), *adopted by* 2011 WL 2112100 (D.S.C. May 27, 2011); *Fox v. Drew*, No. 8:12–cv–421-MGL, 2013 WL 4776706, *11 (D.S.C. Sept.4, 2013) (explaining that a defendant is liable in individual capacity only for personal wrongdoing), *affirmed by* 563 F.App'x 279 (4th Cir. 2014).

Review of the Complaint reflects that Plaintiff does not allege any personal participation in the alleged mail room actions by the supervisory Defendants. Plaintiff does not allege that they personally confiscated any of his legal mail or interfered with his ability to litigate his cases. Rather, Plaintiff complains that the supervisory Defendants resolved grievances or were responsible for enforcing policy. (DE# 1 at 7). Although Plaintiff vaguely complains that prison policies and procedures "are supposed to be enforced," a defendant's alleged failure to follow prison policy or procedure does not, by itself, amount to a constitutional violation. *United States v. Caceres*, 440 U.S. 741 (1978); *Riccio v. Cty. of Fairfax, Va.*, 907 F.2d 1459, 1469 (4th Cir. 1990) ("If state law grants more procedural rights than the Constitution would otherwise require, a state's failure to abide by that law is not a federal due process issue."); *Keeler v. Pea*, 782 F.Supp. 42, 44 (D.S.C.1992) (violations of prison policies which fail to reach the level of a constitutional violation are not actionable under § 1983). The Complaint fails to allege facts that would subject the supervisory Defendants to personal liability. Summary dismissal is appropriate.

**E.  No Liability for Denying Grievances**

Although Plaintiff appears to be suing the supervisory Defendants for denying his grievances, an official's denial of a grievance "after-the-fact" of an alleged incident falls quite short of alleging any basis for a § 1983 claim. *See, e.g., Brooks v. Beard*, 167 F.App'x 923, 925 (3rd Cir. 2006) (dismissing case as frivolous pursuant to 28 U.S.C. § 1915(e)(2)(B) and explaining that a response by prison officials to an inmate's grievance does not establish the involvement of those officials in the alleged underlying incident); *DePaola v. Ray*, 2013 WL 4451236, *8, 30, n.7 (W.D.Va.), *adopted by* 2013 WL 4453422 (W.D.Va. Aug. 16, 2013). Moreover, the Fourth Circuit Court of Appeals has held that "prisoners do not have a constitutional right of access to the

grievance process." *Daye v. Rubenstein*, 417 F.App'x 317 (4th Cir. 2011), *cert. denied*, 132 S.Ct. 161 (2011).

Plaintiff complains about the processing and resolution of various grievances (DE# 1 at 7), but his attached exhibits all indicate that such grievances were considered and appropriately addressed in a timely manner. For example, Plaintiff attaches a grievance from 2011 where grievance procedures were explained to him in writing. (DE# 1-1 at 39-40). In another grievance, Plaintiff complained that he wanted grievance responses by certified mail. The Warden explained that the "SCDC interdepartmental mailing system is utilized when correspondence is addressed to employees of the Agency." (DE# 1-1 at 77). Plaintiff's dislike of inter-departmental mail (DE#1 at 9-10, ¶¶ 13-14) and his desire for certified mail for grievance responses fails to state a constitutional violation, as he is complaining of a non-existent right.

Plaintiff also attaches a 2014 grievance in which he complained about "improper processing" of several prior grievances in 2010 and 2012. (DE# 1-1 at 69). He complained that an unidentified "Jane Doe" had entered the office, allegedly "interrupting" his conversation in "my personal space, intimidati (sic) and signalling and clicking of the pen," which he found "unacceptable." (*Id*.). The grievance was returned on October 6, 2014 with a written explanation by Inmate Grievance Coordinator Pamela Smith, advising that under SCDC Policy GA.01.12:

> [I]nmates cannot file a grievance on the disposition of another grievance(s)… Grievance ACI-0420-14 has been forwarded to the Inmate Grievance Branch and all issues/concerns about the processing of this grievance should have been include in the Step 2 grievance. Also, there was nothing improper about the service of your grievance on 9-26-2014; IGC M. Smart's presence did not cause any intimidation and invasion of your personal space, nor did any other action take place that can be construed as being inappropriate or unacceptable."

(*Id*.). Although Plaintiff alleges that he was thereby "prejudiced," such contention is conclusory. (DE# 1 at 8). Plaintiff vaguely complains that Defendant Smith "has a history of filing (sic) out

the "Grievant Section," but fails to explain what he means and fails to provide any coherent reason how this violates any right for purposes of § 1983. (*Id.*). The Complaint fails to state a claim for any constitutional violation based on the processing and denial of grievances. Such allegations are frivolous, both factually and legally. Summary dismissal is appropriate.

### F.  Alleged Denial of Access to Courts

Plaintiff sues the Defendants for a litany of minor complaints about mail room services and asserts in conclusory fashion that he was denied "access to courts." He complains primarily of actions by two non-supervisory mail room workers, Defendants Jones and Grubbs. To state a claim for denial of access to courts, a prisoner must allege actual prejudice to specific litigation, i.e. he must allege that a non-frivolous legal claim was frustrated or impeded by an actual deprivation of access. *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). The Fourth Circuit Court of Appeals has emphasized that in asserting such a claim, "a prisoner cannot rely on conclusory allegations…[s]pecificity is necessary." *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996).

Many of the Plaintiff's generalized complaints are patently trivial and appear to be based on his own misunderstandings or his own failure to send items to the appropriate address. For example, the Plaintiff attaches a letter from the South Carolina Court Administration advising that it is "an administrative agency and is not a court of law; therefore, the enclosed document(s) which you have submitted for filing are  being returned to you." (DE# 1-1 at 56). In other words, SCDC prison employees did not interfere with Plaintiff's mail, he simply did not send his mail to the correct place.[7]

---

[7] In another § 1983 action that was summarily dismissed, Plaintiff complained that the Clerk of Court for Richland County, South Carolina, did not file his lawsuits because he had failed to pay the filing fee or move to proceed *in forma pauperis*. *See Taylor v. Brooks*, Case No. 3:15-cv-1138-RMG-MGB, 2015 WL 4274834 (D.S.C. July 14, 2015), *affirmed* 627 F. App'x 206, 2015 WL 9287065 (4th Cir. Dec. 22, 2015).

Even liberally construed, Plaintiff's allegations concern only *de minimus* inconveniences. Plaintiff complains that when "disruptive schedules" (i.e. lock-down) prevented materials from being distributed to prisoners, they would submit a request to staff, and Defendant Jones would have a "make up" day for distribution of "paper and brown-clasp envelopes." (DE# 1 at 5). He complains that "sometimes, these makeup days were cancelled." (*Id*.). Plaintiff is essentially complaining of a routine scheduling matter. Prison officials are accorded "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Hewitt v. Helms*, 459 U.S. 460, 472 (1983), *modified on other grounds by Sandin*, 515 U.S. at 481. The Complaint fails to identify any non-frivolous legal claim that was impeded by the cancellation of a makeup day.

Plaintiff's other criticisms about the mail room fare no better. For example, he complains that he had to give documents to mail room employees for photocopying (which he mischaracterizes as a "privacy breach"), that some photocopies made by Defendant Jones were "unacceptable and unreadable," and that Ridgeland Correctional Institution has better hours and does not require "passes." (DE# 1 at 5). Plaintiff alleges that Defendant Grubbs "faked" calls to SCDC Headquarters, "falsely told others that Plaintiff was mouthing off," used staples on holiday cards, and "wilfully" did not use "19-45s" as required. (*Id*. at 9-11, ¶¶ 10, 17, 19, 21). Plaintiff does not explain how photocopy services, alleged "fake phone calls," the use of a staple on incoming holiday cards, or purported failure to use a particular form impeded his access to courts by causing actual prejudice to any specific litigation.[8]

---

[8] Although Plaintiff alleges that he mailed items that "never made it to either of their intended destinations, which adversely affected the merits of Plaintiff's first and only appeal challenging his improper sentence" (DE# 1 at 14, ¶ 31), Plaintiff was not at Allendale Correctional Institution when his direct appeal was decided in 2007. *See State v. Taylor*, 2007 WL 8391909 (S.C. Ct. App. Oct. 9, 2007). A state records check reveals that his PCR applications were dismissed on June 21, 2004 and April 29, 2010, prior to his incarceration at Allendale. Any actions by the

Certain allegations are based on Plaintiff's own misapprehension of the law. For example, he complains that Defendant Jones refused to "fully copy" page 5 of an affidavit and told him to sign the document first (i.e. "only where the notary part is") before it could be notarized. (DE# 1 at 7-8, ¶ 7.3). His assertion that this amounts to a constitutional violation is frivolous. A notary's main function is to witness and authenticate the signing of a document under oath. Although Plaintiff complains that Defendant Grubbs "denied a full notary" because "she did not see Plaintiff sign said document" (DE# 1-1 at 1), a notary may not attest to a signature that she has not personally witnessed. Even when taken as true, such allegation fails to state a constitutional claim for denial of access to courts. Plaintiff complains that Defendant Grubbs "refused to completely process her notary (DE# 1 at 8, ¶ 7.8), but refers to attached Exhibit 50 <u>which is notarized</u>. Other attached exhibits are all notarized. (DE#1-1 at 11, 17, 44, 48, 68). Plaintiff attaches one affidavit which Plaintiff did not sign, and therefore, could not properly be notarized. (*Id*. at 5). Plaintiff's allegation that Defendant Grubbs failed to "strictly follow policy, when notaries are issued" (DE# 1 at 10, ¶ 16) is vague and fails to state any sort of plausible claim by the Defendants.

Plaintiff complains that Grubbs sent legal mail "through regular mail" (DE# 1, ¶ 27), but fails to explain why he believes this violates the Constitution. Plaintiff has not alleged specific facts indicating that the Defendants' actions with respect to his mail interfered with specific litigation or resulted in the loss of a past litigation remedy. *Christopher*, 536 U.S. at 413. Plaintiff also complains of various incidents that have nothing to do with any constitutional violation. For example, he complains that Defendant Grubbs "intentionally delayed" an envelope to Emmaus College with a test exam of 132 questions and that his letter to an unspecified "professor of law"

---

individual Defendants had nothing to do with those dismissals. Other exhibits pre-date his incarceration at Allendale and are not relevant. (*See e.g.*, DE# 1-1 at 15-16, envelopes dated 2009).

was "never responded to." (DE# 1-1 at 3).[9] Plaintiff speculates that such letter was "most likely lost or destroyed by Grubbs." (DE# 1-1 at 4). The fact that Plaintiff received no response to his letter cannot be blamed on any Defendants; his allegation is mere conjecture and fails to state a plausible claim for denial of access to courts.

Plaintiff's exhibits also reflect that, in many instances, he is complaining of actions by clerks of court, rather than any Defendants. For example, he complains about letters from the South Carolina Court of Appeals, complains that the clerk's office for the Sumter County Court of Common Pleas "inappropriately provided Plaintiff an undated, unsigned sticky informing that his case was not file (sic)," and complains to the Clerk of Court for United States District Court that he has experienced "difficulties in the state court of common pleas" (DE# 1-1 at 3, 58).[10] Some exhibits attached to the Complaint have no discernible relevance of any kind. (See, e.g., DE# 1-1 at 14, list of prison classes, including as Wiccan Study, House of Yahweh, Native American instruction, brain fitness, and yoga; *Id*. at 24, "Tender Thoughts" Thanksgiving greeting card from a relative referring to Plaintiff's "brain tumor;" *Id.* at 38, chart of physical exercises; *Id*. at 28-29, brochure about Holy Land tour). Plaintiff appears to be venting his anger at prison staff in his Complaint, but he fails to set forth specific facts that would state a plausible claim for any constitutional violation.

## G.  Alleged Violation of "First Amendment, specifically the Chilling Effect"

---

[9] The Complaint's exhibits, which are in no particular order, include a letter to a law professor in which Plaintiff offers "to provide a fair percentage for benefits from the future Judgment." (*Id*. at 59).

[10] Any Clerks of Court would be immune from suit because they are entitled to quasi-judicial immunity for performing their official duties for the courts. *See, e.g., Wymore v. Green*, 245 F.App'x 780, 783 (10th Cir. 2007) (affirming grant of absolute quasi-judicial immunity to state court clerk who refused to file prisoner's documents), *cert. denied*, 552 U.S. 1194 (2008); *Martin v. Rush*, Case No. 13–693-TLW, 2013 WL 2285948, * 5 (D.S.C. May 23, 2013) (holding that clerk of court was entitled to quasi-judicial immunity); *Robinson v. McBride*, Case No. 13–352-CMC, 2013 WL 2099491, * 4 (D.S.C. 2013) (same), *adopted*, 2013 WL 2099707 (D.S.C. May 14, 2013), *aff'd*, 540 F.App'x 212 (4th Cir. 2013).

To state a First Amendment retaliation claim, a plaintiff "must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995). A plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than *de minimus* inconvenience. *ACLU v. Wicomico Cty.*, 999 F.2d 780, 785-86, n.6 (4th Cir. 1993). The Fourth Circuit Court of Appeals has explained that a plaintiff must allege specific facts to support the claim; bare assertions of retaliation will not establish a claim of constitutional dimension. *Adams*, 40 F.3d at 74–75; *Daye*, 2011 WL 917248 at *2.

Plaintiff's Complaint fails to allege specific facts to provide a plausible claim of First Amendment retaliation. *See Goodman v. Smith*, 58 F. App'x 36, 38 (4th Cir. 2003) ("plaintiff must allege sufficient facts to warrant concern that the alleged retaliation might have a chilling effect on the exercise of the right to access the courts and show that he suffered more than a *de minimis* inconvenience"), *cert. denied*, 540 U.S. 930 (2003). Although Plaintiff does not like the results of his grievances, this does not mean that he was retaliated against or that his speech was "chilled." To the extent Plaintiff complains about occasional legibility of photocopies or having to sign a document before it is notarized, these are "*de minimis* inconveniences" which are insufficient to state a plausible claim. The attached exhibits do not provide any indication of retaliation or any facts that might suggest any chilling effect. *See Daye*, 2011 WL 917248 at *2 (affirming dismissal of retaliation claim, observing that prisoner had filed grievances and a lawsuit, and accordingly, his access to courts had not been chilled in any way). The Complaint fails to set forth coherent allegations that would state a plausible violation of the First Amendment.

**H.  Alleged Violation of Fourth Amendment**

Plaintiff's Complaint lists violation of the Fourth Amendment as an "issue" but fails to allege any facts that would state a plausible claim for violation of Plaintiff's right to be free from unreasonable search and seizure. Nothing in the Complaint pertains to such constitutional right. Hence, the Complaint fails to state a claim for violation of the Fourth Amendment.[11]

## I. **Alleged Discrimination and Retaliation**

Plaintiff's Complaint also lists "Discrimination and Retaliation" as an "issue," but sets forth no specific facts that would state a plausible claim. Although Plaintiff suggests that "he was retaliatorily transferred [to Ridgeland Correctional Institution] after three and a half years," a prisoner has no inherent constitutional right to be incarcerated in a particular institution. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Neitzke*, 490 U.S at 327-28 (describing prisoner's "claim that his transfer within the reformatory violated his rights under the Due Process Clause" as a claim of "infringement of a legal interest which clearly does not exist"). The Constitution does not protect a prisoner against every change in the conditions of his confinement. *Meachum*, 427 U.S. at 222.

So long as the conditions at the new prison are not significantly harsher, transfer from one prison to another does not constitute an atypical and significant hardship. *Wilkinson v. Austin*, 545 U.S. 209, 223–24 (2005); *Sandin v. Conner*, 515 U.S. 472, 481 (1995). Plaintiff does not allege that conditions at Ridgeland are significantly harsher. His transfer within the prison system did not violate any constitutional right. *Atiyeh v. Capps*, 449 U.S. 1312, 1315–16 (1981) (Eighth Amendment does not require that prisoners "be housed in a manner most pleasing to them"); *Jones v. SCDC*, Case No. 5:12–cv–03554–RBH-KDW, 2013 WL 3880175, *6 (D.S.C. July 26, 2013). Plaintiff's personal belief that his transfer was retaliatory is not sufficient to support a claim. Summary dismissal is appropriate.

---

[11] Plaintiff appears to have copied this from one of his prior lawsuits where he had complained that prison staff had searched his cell and left it in disarray. *See Taylor v. Amason*, D.S.C. Case No. 2:13-cv-03449-RMG.

### J.  **Alleged Conspiracy**

Plaintiff's Complaint also lists conspiracy as an "issue." To make out a conspiracy claim under 42 U.S.C. § 1985, a plaintiff must allege that the conspiracy was "motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *United Bd. of Carpenters & Joiners v. Scott*, 463 U.S. 825, 828–29 (1983). The Complaint makes no such allegations. Even with liberal construction, the Complaint fails to state a plausible claim under such statute. *See Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995) (holding that conclusory allegations of conspiracy are insufficient to support a § 1985 claim); *Martin v. Byers*, 581 F. App'x 225, 226 (4th Cir.) (summarily dismissing conspiracy claim), *cert. denied*, 135 S.Ct. 487 (2014); *Sciolino v. Marine Midland Bank-Western*, 463 F. Supp. 128, 131 (W.D.N.Y 1979) (summarily dismissing because the plaintiff's allegations of conspiracy were completely frivolous and insubstantial). Plaintiff's conspiracy claim is conclusory and unsupported by any specific facts. Based on his own suspicions about conspiracy, Plaintiff characterizes procedures in the prison mailroom as "strange and bizarre occurrences." (DE# 1 at 8, ¶ 7.9). Such claim is frivolous and subject to summary dismissal.[12]

### K.  **Alleged Claim for "Conditions of Confinement"**

Although Plaintiff lists "conditions of confinement" as an issue, the Complaint alleges no relevant facts regarding food, housing, or medical care. The Fourth Circuit Court of Appeals has repeatedly emphasized that a district court should not *sua sponte* develop claims not clearly raised in a complaint. *Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir.1997), *cert. denied*, 522 U.S. 924

---

[12] If the Complaint is construed as bringing a state claim of civil conspiracy, it is still subject to summary dismissal. "A claim for civil conspiracy must allege additional acts in furtherance of a conspiracy rather than reallege other claims within the complaint." *Killian v. City of Abbeville*, Case No. 8:14–1078–TMC-KFM, 2015 WL 1011339 , *4 (D.S.C. March 6, 2015) (citing *Hackworth v. Greywood Hammett, LLC*, 385 S.C. 110, 682 S.E.2d 871, 874 (S.C.Ct.App. 2009). The Complaint does not do so.

(1997); *Gordon*, 574 F.2d at 1151. "While the Court liberally construes Plaintiff's claims, it will not fundamentally rewrite the causes of action provided in the Complaint." *Kerr v. Marshall Univ. Bd. of Govs*., 2015 WL 1405540 (S.D.W.Va. Feb. 4, 2015), *adopted by* 2015 WL 1405537 (S.D.W.Va. Mar. 26, 2015), *affirmed* 824 F.3d 62 (4th Cir. May 24, 2016). The United States Supreme Court has made it clear that a plaintiff must set forth sufficient facts to state a plausible claim. *Iqbal*, 556 U.S. at 677–79. Even with liberal construction, the Complaint fails to state a plausible claim for conditions of confinement and is subject to summary dismissal.

### L. Alleged Denial of Self-Representation in Violation of *Faretta v. California*

Plaintiff seeks damages, claiming he was "wrongfully convicted" in violation of the denial of his "right of self-representation in light of *Faretta v. California*, 422 U.S. 806 (1975), S.C. Code 40-5-310, and as an Indigent Individual." (DE# 1 at 3, ¶ IV).[13] In *Faretta*, the United States Supreme Court held that a defendant in a state criminal trial has a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so, and that the state may not force a lawyer upon him when he insists that he wants to conduct his own defense. *Id*. at 834. A State may, even over objection by the defendant, appoint "standby counsel" to assist the defendant (if and when he requests help). *Id*.

Plaintiff may not challenge his conviction in this civil action. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). Plaintiff's convictions have not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal, or called into question by a federal court's issuance of a writ of habeas corpus ,and therefore, under *Heck*, they may not be attacked by means of § 1983. *Id.; and see Griffin v. Baltimore Police Dept*., 804 F.3d 692, 695-96 (4th Cir. 2015)

---

[13] S.C. Code 40-5-310 provides: "No person may either practice law or solicit the legal cause of another person or entity in this State unless he is enrolled as a member of the South Carolina Bar pursuant to applicable court rules, or otherwise authorized to perform prescribed legal activities by action of the Supreme Court of South Carolina."

(relying on *Heck* and affirming dismissal of § 1983 suit for damages). Moreover, his reliance on *Faretta* is misplaced. The Defendants are prison staff who were not responsible for any court decisions regarding Plaintiff's "self-representation" in state court proceedings. The state court was responsible for any decision for the provision of stand-by counsel, and in any event, would be immune from suit for damages. Plaintiff cannot seek "damages" against prison staff for state court decisions. The Complaint fails to state a cognizable claim against the Defendants on such basis.

### M.  Alleged Interference with Federal Mail

Plaintiff also attempts to sue the Defendants for alleged "interference with federal mail" in violation of 18 U.S.C. § 1701 (obstruction of mail generally) and § 1702 (obstruction of correspondence). Such federal statutes, however, set forth criminal offenses and do not provide any private cause of action to Plaintiff. *See Contemporary Mission, Inc. v. U.S. Postal Service*, 648 F.2d 97, 103 (2d Cir. 1981) (holding that trial court properly dismissed such claims because those statutes do not provide any private cause of action); *Schiaffo v. Helstoski*, 492 F.2d 413 (3rd Cir. 1974) (same); *Katz v. Molic*, 1984 WL 1078, *2 (S.D.N.Y. 1984) (same). Courts have observed that a "civil claim arising out of an alleged violation of penal statutes relating to the mails, i.e., 18 U.S.C. §§ 1701, 1702 ..., is not the type of action envisioned under this section." *Sciolino v. Marine Midland Bank-Western*, 463 F. Supp. 128, 131 (W.D.N.Y 1979).

Plaintiff may not proceed against the Defendants under a criminal statute and has no authority to file a criminal complaint. *See State v. Blakely*, 402 S.C. 650, 658 (2014) (observing that "a prosecutor has discretion in choosing how to proceed with a case, including whether to prosecute in the first place"). Plaintiff is not a prosecutor and lacks the authority vested in such officials. *See, e.g., Bischoff v. Waldorf*, 660 F.Supp.2d 815, 818 (E.D. Mich.) (explaining that a private "individual may not bring criminal charges"). Plaintiff has no private right of action under

18 U.S.C. §§ 1701, 1702. The Plaintiff's alleged claims under such criminal statutes are legally baseless, and therefore, "frivolous." *Nietzke*, 490 U.S. at 319; *Denton*, 504 U.S. at 31. Any attempts by Plaintiff to bring private causes of action under criminal statutes are subject to summary dismissal.

### N. Alleged Violation of Thirteenth Amendment

Plaintiff's Complaint alleges "violation of Plaintiff's civil right, XIII, U.S. ex rel. Accordi v. Shaughnessy, 74 S.Ct. 499 (1954), as revised." (DE# 1 at 3, IV, as in original). The Thirteenth Amendment, in Section 1, expressly provides that "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Plaintiff incorrectly equates his imprisonment for his criminal conviction with "slavery."

Given the plain language of the Amendment excepting "punishment for crime," and given that Plaintiff is serving sentences for criminal convictions, his claim for violation of the Thirteenth Amendment is legally and factually frivolous. *See Nietzke*, 490 U.S. at 319; *Denton*, 504 U.S. at 31; *and see, e.g., Carter v. Ervin,* Case No. 0:14–cv–00865–TLW–PJG, 2014 WL 2468351, *5 (D.S.C. June 2, 2014) ("even if the court were to construe Plaintiff's conclusory allegations as sufficient to confer subject matter jurisdiction…, [the] defendants would still be entitled to summary dismissal because Plaintiff's claims against them are legally frivolous"), *appeal dism'd by* 585 F.App'x 98 (4th Cir. 2014). Plaintiff's reliance on *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954) is misplaced. In *Shaughnessy*, a habeas petitioner challenged the validity of the denial of his application for suspension of deportation under the provisions of section 19(c) of the Immigration Act of 1917. The present case has nothing to do with deportation regulations or the Immigration Act of 1917. Summary dismissal of such claim is appropriate.

### O.  Requested Relief is Inappropriate or Unavailable

Plaintiff asks for a variety of relief in addition to monetary damages. Much of the requested relief has little to do with the allegations of the Complaint or is otherwise inappropriate. Although Plaintiff asks this Court to order the Defendants "to correct and destroy inaccurate and incorrect records connected to Plaintiff," the Complaint makes no allegations regarding inaccurate records. Plaintiff requests "a copy of the contents of the Warden's file on him" and an "official apology," but alleges no reasons why he would be entitled to such file or to any sort of "official apology." Although Plaintiff asks for "mental health counseling," this is not an available form of relief.

To the extent Plaintiff asks this Court to "re-open" prior state court cases (DE# 1 at 19), such request is inappropriate because this federal court does not have oversight of the state courts. Under the Rooker–Feldman doctrine, a "party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Am. Reliable Insurc. Co. v. Stillwell*, 336 F.3d 311, 316 (4th Cir. 2003) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)).[14] The doctrine prevents this Court from reviewing Plaintiff's prior state court cases. *Moore v. City of Asheville, N.C.*, 396 F.3d 385, 392 n.2 (4th Cir.), *cert. denied*, 546 U.S. 819 (2005). Moreover, although Plaintiff challenged aspects of his state cases in his federal habeas petition, such petition was denied on the merits. *See Taylor v. Warden*, Case No. 2:13-cv-2213-RMG. Those issues may not be revisited here. Plaintiff's request for this Court to "re-open" his state cases is not an available form of relief in this § 1983 action.

## IV.  Recommendation

---

[14] *See Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462, 476–82 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).

Accordingly, the Magistrate Judge recommends that the Complaint (DE#1) should be **summarily dismissed** with prejudice. As this dismissal is pursuant to the enumerated grounds of 28 U.S.C. § 1915(g), the dismissal of this case should count as a strike.

**IT IS SO RECOMMENDED.**

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

November 8, 2016
Charleston, South Carolina

Plaintiff's attention is directed to the **Important Warning** on the following page:

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).